UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-20519-CR-JAL

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JAMES SABATINO,

    Defendant.

_____/

## MOTION TO MODIFY COMMUNICATION RESTRICTIONS PURSUANT TO 18 U.S.C. § 3582(e) TO ALLOW THE DEFENDANT TO RECREATE WITH JOAQUIN GUZMAN

COMES NOW the Defendant, JAMES SABATINO, by and through the undersigned attorney and in support of this Motion states as follows:

### BACKGROUND

On June 30, 2016 a Grand Jury in Miami, Florida returned a fourteen count Indictment against the Defendant and others charging them with conspiracy to violate the Racketeer Influence and Corrupt Organizations Act ("RICO"), in violation of 18 U.S.C. § 1962(d); Conspiracy to Commit Mail and Wire Fraud in violation of 18 U.S.C. § 1349; and numerous counts of Mail Fraud. [DE:3]

1

Thereafter, a Superseding Information was filed charging Sabatino with 29 offenses including those listed above. [DE:214]

According to the Stipulated Factual Proffer, the charges arose from Mr. Sabatino, known to law enforcement as a member of the Gambino Organized Crime Family of La Cosa Nostra ("LCN") and being the sole organizer and leader of a prison-based enterprise that is associated with the Gambino Family of LCN. The enterprise engaged in acts of Mail and Wire Fraud, Interstate Trafficking of Stolen Property, Obstruction of Justice, Introduction of Contraband into Federal Prisons, Witness Intimidation, Bribery, Conspiracy to Commit Murder and other criminal activities in the Southern District of Florida, Southern District of New York and the Northern District of Georgia. [DE:231:2-2]; [DE:286:5-6]

While incarcerated Sabatino obtained a series of cellular telephones, which he acquired from federal correctional officers. Through the use of these telephones, visits and other inmates, Sabatino and other members of the enterprise conducted regular meetings by telephone, in person or by other means of communication, during which they planned, and otherwise engaged and discussed, criminal activities, including Fraud, Interstate Trafficking of Stolen Property, Introduction

of Contraband into Federal Prisons, Bribery, Obstruction of Justice, Witness Intimidation and Murder. [DE:231:5-6]

During the course of the racketeering conspiracy, Sabatino repeatedly communicated with members and associates of the Gambino Organized Crime Family of LCN and directed them to threaten violence and murder those who posed a threat to him or the enterprise or jeopardized its operations, including witnesses to the illegal activities of the enterprise. [DE:231:3, 6-7, 10-11]

From his prison cell, Sabatino recruited a number of other individuals, including other inmates, federal corrections officers and non-incarcerated co-conspirators to participate and carry out those activities.[DE:231:3-11] Despite the fact that Sabatino was incarcerated, members and associates of the enterprise were willing to follow his orders and directives. As a result, Mr. Sabatino was able to orchestrate the theft of over $10,000,000.00 worth of jewelry during a two-month period. [DE:231:3-11]

In the Plea Agreement and Stipulated Letter of Understanding, Sabatino agreed to plead guilty to Count-1 of the Superseding Information, to the RICO conspiracy. [DE:230:1] [232:1] Sabatino also agreed to the Government filing a Motion pursuant to 18 U.S.C. § 3582(e) for Special Conditions of Confinement, to wit:

> 3(a). The Defendant be prevented from communicating with anyone other than his step-mother, Carol Fardette, undersigned counsel, Joseph S. Rosenbaum, and paralegal Kimberly Acevedo during the term of his imprisonment.
>
> 3(b). The Defendant be prevented from communicating with other inmates during the term of his imprisonment; and
>
> 3(c). These conditions continue until such time as the Defendant unequivocally demonstrate he will not threaten or do violence and/ or physical harm to other persons. [DE:232:1]

Sabatino agreed to these terms to ensure at minimum the Government would not attempt to prevent him from communicating with his step mother, Carol Fardette, Attorney Joseph S. Rosenbaum, and paralegal (Now attorney) Kimberly Acevedo. Mr. Sabatino understood and acknowledged that due to his current charges, as well as his extensive history of continuing criminal activity from prison, that the Government would seek communication restrictions. The purpose of the plea was for the Government to acknowledge that Sabatino would be able to communicate with the above named persons. It was Sabatino's understanding that this was the minimum and that he could at any time seek to add an additional person to his approved communication list, so long as there was no probable cause to believe that communication with said additional person would enable Sabatino

4

to continue to control his criminal organization or to participate in criminal activity.

At his sentencing hearing, the District Court sentenced Sabatino to 240-months in prison, to run consecutively to the sentences imposed in other Federal and State cases. [DE:287:2] The District Court orally Granted the Government's Agreed Motion Requesting Imposition of Communication Restrictions pursuant to 18 U.S.C. § 3582(d). [DE:269] The District Court entered said Order in which it made specific findings of facts based upon Sabatino's guilty plea to conspiracy to violate the RICO act, the Stipulated Factual Proffer and his extensive criminal history, wherein many of his crimes were committed while in federal custody. [DE:286] While 18 U.S.C. § 3582(e) only authorizes communication restrictions with a "specific person", because Sabatino is a leader of a large national criminal organization, and in accordance with the with the holding of *United States v. Felipe*, 148 F.3d 101, 109 (2nd Cir. 1998) the Court held:

> We do not believe Congress expected sentencing courts to list every individual of a racketeering organization in cases where sufficient reasons exists to believe that association with **any** member is for purpose of participating in an illegal enterprise. Racketeering groups are often large and boast a constantly changing membership. It would be difficult, if not virtually impossible, to identify each and every active member of such an organization. The purpose of 3582(d) "is to prevent the

>>defendant from continuing his illegal activities from his place of confinement." [Emphasis in original] [DE:286:8 citing *Felipe* at 110]

Thus, the Court found specifically "that there is probable cause to believe the Defendant's association or communication with persons other than his stepmother, his attorneys, or the attorney's staff would enable Defendant to "control, manage, direct, finance, or otherwise participate in an illegal enterprise'." [DE:286:5] Again, with the understanding that he could submit names of specific persons with whom no probable cause existed, Sabatino did not object to the imposition of the restrictions. The Court then imposed the following restrictions on Sabatino's communication as part of his sentence pursuant to 18 U.S.C. § 3582(d) in pertinent part:

>>b. Defendant should be limited, within the U.S. Marshals Service, (BOP), detention facility's reasonable efforts and existing confinement conditions, from having contact, (including passing or receiving any oral, written, or recorded communications) with any other inmate, visitor, attorney, or anyone else, that could reasonably foreseeably result in the Defendant communicating (sending or receiving) information that could allow the Defendant to circumvent the court's intent of significantly limiting Defendant's ability to control, manage, direct, finance or otherwise participate in an illegal enterprise;

>>c. The restrictions specified above should permit Defendant's contacts and communications with the following persons:

> i. Carol Fardette, Defendant's stepmother;
> ii. Joseph S. Rosenbaum, Esq., Counsel for the Defendant; &
> iii. Kimberly Acevedo, Esq., Co-counsel for Defendant.
>
> d. The restrictions specified above shall remain in place until the Defendant demonstrates his communication no longer pose a threat.
>
> 3. **The Court retains jurisdiction to consider any applications made by the Defendant, Defendant's attorneys, or the Government to modify these special conditions of confinement.** [Emphasis added] [DE:286]

These same restrictions were incorporated into Sabatino's Judgment and Sentence as Special Conditions of Confinement pursuant to 18 U.S.C. § 3582(d). [DE:287]

Subsequent to the Court's issuance of the original Order, Sabatino's restrictions have been modified several times. The most recent modification was on December 18, 2019, which imposed the following restrictions:

> a. The Defendant shall be confined during the time of his incarceration so that he is separated from and prohibited from associating or communicating with any other inmate.
>
> b. The Defendant shall be prohibited from communicating with anyone inside or outside of prison except for:
>
> i. Carol Fardette, Defendant's Stepmother
> ii. Joseph S. Rosenbaum, Esq., Defendant's Counsel
> iii. Kimberly Acevedo, Esq., Defendant's Counsel
> iv. Israel Encinosa, Esq., Defendant's Appellate Counsel

7

    c. The restrictions specified above shall remain in effect until the Defendant demonstrates his communications no longer pose a threat.

    d. All other findings in the Court's order imposing communications restrictions pursuant to 18 USC § 3582(e) (D.E. 286) are adopted herein and shall remain in full force and effect. [DE:576][1]

<strong><u>ADX FLORENCE</u></strong>

    Mr. Sabatino is housed at the Federal Supermax ADX Florence. He is in a special wing of the "Special Administrative Measures" ("SAM") Unit called "The Suites." There are only four cells in the wing; each 12' x 7' cell is equipped with a bed, desk, bathroom, shower, and a separate recreation cage. Sabatino's cell has a camera equipped with night vision and sound, this subjects Sabatino to 24/7 audio and visual surveillance, which is monitored and recorded by both the BOP and the FBI. The only other inmate on the range is alleged Drug Kingpin Joaquin "El Chapo" Guzman. Sabatino is prohibited any contact, association or communication with anyone else in the unit.[2]

    He has extremely limited contact with correctional staff. Sabatino is only allowed two social phone calls per month (for 15 minutes) and while he can write letters, as noted his only approved social contact is his step-mother.

---

[1] After the issuance of this modification, the undersigned took over as lead counsel for the Defendant in the District Court. Pursuant to this, the Court terminated the Defendant's communication with attorneys Rosenbaum and Acevedo.

[2] Although Sabatino's communication restrictions prohibit any communication or association with other inmates, Guzman has virtually the same restrictions with the exception that he has several more approved outside social contacts than Sabatino.

Again, Sabatino stresses that he accepted these restrictions and acknowledged they were necessary to prevent him from controlling his criminal organization. Sabatino understood the implications the restrictions would have on his housing conditions when he took the plea.

Mr. Guzman has been housed with the Defendant since his arrival at ADX Florence in 2019. Before Mr. Guzman's arrival at ADX, Mr. Sabatino was alone. Although in separate cells, Mr. Sabatino and Mr. Guzman have communicated freely for over 5 years day and night by talking loudly through the doors. As noted above, all conversations are monitored and recorded visually and audibly by both the BOP and the FBI.

While technically a violation of the Court's 3582(e) restrictions that the Defendant be prohibited from communicating with any other inmate, the Administration at ADX Florence placed Mr. Guzman (with the Government's knowledge and consent) with Mr. Sabatino because they have virtually the same restrictions. Mr. Guzman is also on Special Administrative Measures ("SAM") and not able to communicate with anyone inside or outside of prison except for his two minor daughters and his attorneys. Mr. Guzman has never been able to communicate with any other inmate except for Mr. Sabatino since his extradition to the United States in 2017.

To be clear, the BOP, FBI, DOJ and respective U.S. Attorneys Office have made a conscious decision for Mr. Sabatino and Mr. Guzman to be housed together. The

9

undersigned attorney is aware that the above agencies know that Mr. Sabatino and Mr. Guzman regularly communicate[3]. It is undersigned counsel's understanding that the powers that be, decided that little to no harm can come from allowing this communication. Both Mr. Sabatino and Mr. Guzman have virtually no communication with others and are not anticipated to have any communication with others in the foreseeable future.

## ADX RECREATION

Normally SAM inmates at ADX are permitted to "recreate" with other inmates, albeit in individual recreational cages. SAM inmates can only "recreate"with other SAM inmates and those recreation periods must be under video and audio surveillance. Both Mr. Sabatino and Mr. Guzman are separated from other SAM inmates in the Special Security Unit in an area called "The Suites", because other SAM inmates progress through a program and will in all likelihood be released into general population at some point. In the case of Mr. Sabatino and Mr. Guzman, there is very little likelihood that either will ever be taken off these restrictions. By keeping them separate from other SAM inmates, it prevents them from possibly passing messages to the outside through those inmates that are taken off SAM restrictions and placed back into the general population.[4]

---

[3] Undersigned counsel has previously been contacted by the FBI to inform him that they were aware that Mr. Sabatino and Mr. Guzman are housed together.

[4] Since the Defendant's arrival in the Special Security Unit (SAM), there have been approximately 8 inmates that have been taken off SAM restrictions and sent to general population.

Mr. Guzman and Mr. Sabatino are offered several "recreation" periods a week. The Suites have two recreation cages in the back of the cells. The cages are individual cages, which do not allow physical contact between inmates. The cages are below ground level and are surrounded by 4 walls. The only thing visible from the cages is the sky. Since Mr. Sabatino has been in "The Suites" he has not gone outside to recreate because he is in poor health and when alone in the cages there is nothing to do. It is an empty cage roughly the same size as the cell. Mr. Guzman does go outside in the cage to recreate when allowed in order to get fresh air. However, Mr. Guzman has been unable to interact during recreation with anyone since Mr. Sabatino has been unable to go to recreate at the same time as Mr. Guzman due to Mr. Sabatino's Court Ordered communication restrictions.

It is important to stress that the two cages in "the Suites" are equipped with individual video cameras and audio recording devices. According to the SAMs, the recreation periods must be live monitored by the FBI and the BOP. Any violation of the SAM and/or the Communication Restriction Order would result in the immediate termination of the recreation period and subject the inmate to disciplinary proceedings by the BOP and in the case of Mr. Sabatino, possible sanctions by this Honorable Court for violation of it's Order pursuant to 3582(e).

Lastly, no additional resources would be needed if joint recreation between Mr. Guzman and Mr. Sabatino was allowed. In fact, it would actually take less resources to monitor Mr. Guzman and Mr. Sabatino during joint recreation than if

they recreated separately. This Court should be aware that in the other parts of the Special Security Unit, up to six SAM inmates can recreate in separate recreation cages at the same time.

## ARGUMENT

The Defendant is aware that this is an extraordinary request, but these are extraordinary circumstances. Mr. Sabatino acknowledges that as a leader of a national criminal organization, which he has controlled and directed from prison, it is a legitimate government interest to keep him separated from other inmates.[5] Especially since Mr. Sabatino has been influential over other inmates in the past. The Defendant is also aware of Mr. Guzman alleged status and the initial reluctance this Court may have in allowing these two individuals to recreate together. But the fact is that they have been able to communicate for over five years. These communications have been 100% under video surveillance and voice recordings. During the time that Mr. Sabatino has been able to communicate with Mr. Guzman, neither has violated the terms of the SAMs or the 3582(e) restrictions.

The circumstances of these two specific inmates are unique. They are both considered the most restricted inmates in not just the ADX, but in the entire United

---

[5] Mr. Sabatino and Mr. Guzman's SAMs state "the BOP may permit the inmate to communicate with other SAMs inmates orally only during predesignated times, the place and duration to be set by the BOP. "…[A]ll such predesignated sections maybe monitored and recorded." (SAM Section 1(c)) The recordings of these sections will be "…[A]nalyzed for indications the inmate is attempting to pass messages soliciting or encouraging acts of terrorism, violence or other crimes." (Id) A copy of the SAMs can be provided to the Court upon request.

States. Neither is likely to ever get off of communication restrictions and to communicate with other inmates during the term of their incarceration. All of their communications are monitored except their communication with counsel. Thus, there is no chance that allowing Mr. Sabatino to recreate with Mr. Guzman would pose a risk.

Because of the unique design of ADX Florence, both Mr. Guzman and Mr. Sabatino had to be placed in "The Suites" together. They are the only two inmates in "The Suites" and because of this, they have been communicating with each other for the last 5 years. By granting this request the only thing that would change is that Mr. Guzman and Mr. Sabatino would be able to recreate in their enclosed separate cages during the same period of time.

The Court should note that Mr. Guzman is under SAM communication restriction's only. Thus, Mr. Guzman does not need to ask the court for permission to recreate with Mr. Sabatino. On the other hand, Mr. Sabatino is under SAM restriction and 3582(e) Court Ordered communication restrictions. For this reason, Mr. Sabatino is the only one required to seek Court permission to recreate with Mr. Guzman. The Court should note that the purpose of the 3582(e) restrictions is to prevent the Defendant from being able to "control, manage, direct, finance, or otherwise participate in an illegal enterprise." Because Mr. Sabatino is under video and audio monitoring by the BOP and the FBI 24 hours a day and because all of the civilian communications of both Mr. Guzman and Mr. Sabatino are monitored

as well, there is no chance that these communications would pose a danger under 3582(e).

Mr. Guzman is a 67 year old man, who speaks no English, only Spanish. He has had a very difficult time acclimating to life in ADX and his severe communication restrictions. Mr. Sabatino is fluent in several languages (Italian, Sicilian, Latin and Arabic) and speaks some Spanish. Mr. Sabatino's Spanish is good enough to conduct small talk with Mr. Guzman. In reality, Mr. Guzman has learned a little English from Mr. Sabatino. Most importantly, Mr. Sabatino often serves as a translator between the guards and Mr. Guzman. There are not many Spanish speaking officials at ADX Florence and Mr. Sabatino is often asked to translate for Mr. Guzman.

## **PLEA AGREEMENT**

The communication restrictions in this case were requested by the Government and imposed by this Honorable Court pursuant to a Plea Agreement and Stipulated Letter of Understanding. [DE:231:232] Per the Agreement, the Defendant agreed not to contest the imposition of the communication restrictions.

In this case, Mr. Sabatino was charged and convicted of being the leader of national criminal organization, and ordering numerous crimes, including murders from his prison cell. In addition, Mr. Sabatino was found to have used his power of association to recruit fellow inmates and their family members into members or associates of his organization. Based on this and Sabatino's history of ordering

criminal activities from prison for a number of years, he understood the Government would seek communication restrictions.

For this reason, Sabatino accepted the Plea Agreement that would ensure he would at least be able to communicate with his step mother Carol Fardette as she had no connection to organized crime whatsoever. Because of the extremely unique circumstances of virtually everyone in Sabatino's family and circle being alleged to be involved in the Gambino Organized Crime Family, he accepted the plea to ensure at the least he would be able to communicate with Ms. Fardette. It was understood that if Sabatino could identify someone in the future who would not enable him to commit crimes, he could seek approval to communicate with such person.

The Defendant is not seeking to amend the terms of the Plea Agreement. He continues to acknowledge his communications with most other inmates could enable him to pass messages or directives to others that would allow him to conduct the affairs of his criminal organization. What the Defendant is submitting to this Court is that Mr. Guzman should be exempted from this restriction considering they have virtually the same restrictions and have already been communicating and housed together for over five years. While Mr. Sabatino agrees the housing of Mr. Guzman with him is prohibited by the current Court Order, the BOP, FBI and respective A.U.S.A's have seemed to conclude that due to these

unique circumstances, there is no other reasonable alternative but to house them together.

## MR. GUZMAN JOINS IN THIS REQUEST TO RECREATE WITH MR. SABATINO

Undersigned counsel is now also the attorney for Mr. Guzman.[6] The undersigned has received a letter from Mr. Guzman who conveys that he would very much like to attend recreation with Mr. Sabatino. In fact, Mr. Guzman has repeatedly requested to be allowed to go to recreation with Mr. Sabatino (in separate recreation cages) to the ADX Administration. Mr. Guzman was informed that it is Mr. Sabatino's Court Ordered Communication Restrictions that prohibits this.[7]

The SAM and the BOP Policy explicitly allows for joint recreation. If the Court enters an order modifying Mr. Sabatino's 3582(e) restrictions, the BOP would allow joint recreation in accordance with the SAM monitoring provisions and BOP policy.

## CONCLUSION

The undersigned has sent a copy of this motion to BOP/ADX attorney, **Adam**

---

[6] See Case Number 07-20508-CR-LENARD [DE:231], where the undersigned filed a temporary notice of appearance on behalf of Mr. Guzman.[DE:231]

[7] While the Government has informally allowed the Defendant and Mr. Guzman to be housed together and communicate for the last five years, it would take a modification of the Defendant's 3582(e) restrictions for the BOP to permit joint recreation. Ironically, the only time the two cannot communicate is when one is at recreation.

**Powell** and he has yet to inform the undersigned attorney as to what his position is regarding said motion.

The undersigned has contacted A.U.S.A., Christopher Brown concerning this motion and he has informed the undersigned attorney that he objects to the granting of this motion.

WHEREFORE FOR GOOD CAUSE shown, the Defendant, JAMES SABATINO, respectfully request that an Order be entered Granting this Motion and allowing the Defendant to joint recreate with Joaquin Guzman.

    Respectfully submitted,

    **Encinosa Law, P.A**.
    Israel Jose Encinosa, Esq.
    8950 SW 74th Court, Suite 2201
    Miami, Florida 33156-3181
    Tel. (305) 804-6976
    Fax. (305) 203-4707
    E-mail: encinosalaw@reagan.com

By: */s/ Israel J. Encinosa*      ,
    Israel Jose Encinosa, Esq.
    FBN 435007

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically upon all counsel of record via CM/ECF on this 4th day of March, 2025.

By: *Israel J. Encinosa*,
Israel Jose Encinosa, Esq.